UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  08-21156-CIV-ALTONAGA/Brown

HERNAN M. SAUCEDO, *et al.*,

       Plaintiffs,

vs.

PHOENIX AUTO SALES, INC., *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants' Motion for Summary Judgment [D.E. 48], filed on December 5, 2008.  The Court has carefully considered the Motion, pertinent portions of the record, and applicable law.

## I.  BACKGROUND[1]

Plaintiffs, Hernan M. Saucedo ("Saucedo"), Jose Luis Garion ("Garion"), and Ignacio Mesa ("Mesa"), were employed as used car salesmen at Defendant, Phoenix Auto Sales, Inc. ("Phoenix"), at various times in 2007 and 2008.  (*See Def. Statement of Mat. Facts* [D.E. 48] at ¶ 1; *Pl. Statement of Mat. Facts* [D.E. 50] at 2).  Phoenix buys cars from local auctions and then resells them at two car lots located in South Florida.  (*See Def. Mat. Facts* at ¶¶ 1, 24).  Phoenix's annual sales exceeded $500,000 during the applicable periods.  (*See Motion* at 15; *Opposition* [D.E. 49] at 5).  Phoenix sold a mixture of domestic and foreign used vehicles.  (*See Pl. Mat. Facts* at 3).  Phoenix did not buy or

---

[1]  The facts set forth in this section are drawn from the statements of material facts submitted by the parties pursuant to Local Rule 7.5(c).  Plaintiffs purport to "deny all material facts filed with Defendants' Motion for Summary Judgment to the extent they conflict with" the facts laid out in their own Statement. Many of the factual assertions in Defendants' Statement, however, are not refuted in Plaintiffs' Statement and are supported by citations to the record.

Case No.  08-21156-CIV-ALTONAGA/Brown

sell automobiles or otherwise do business outside of Florida.  (*See Def. Mat. Facts* at ¶ 16).

Phoenix's finance manager, Adriana Pineda-Gomez, stated she interacted with companies outside

of Florida in obtaining financing for customers who purchased cars at Phoenix.  (*See Pl. Mat. Facts*

at 4-5).  Defendants used the local branches of financing companies to obtain vehicles at auction.

(*See Def. Mat. Facts* at ¶ 23).

Plaintiffs were paid based on commission rather than hourly, as is common practice in the

industry.  (*See id.* at ¶ 10).  Plaintiffs allege, and Defendants apparently do not dispute, that Saucedo

was employed by Phoenix from May 23, 2007 to March 21, 2008, Garion from May 9, 2007 to July

18, 2007, and Mesa from February 28, 2008 to May 5, 2008.  (*See Second Amended Complaint*

("*Complaint*") [D.E. 17] at ¶ 10).

On June 25, 2008, Plaintiffs filed their "Second Amended Complaint Under 29 U.S.C. 201-

216 -- Overtime Wage Violation."  Although the Complaint is hardly a model of clarity, it appears

Saucedo alleges a violation of the overtime provisions of the Fair Labor Standards Act ("FLSA")[2]

and Garion and Mesa allege minimum wage violations under the FLSA and Florida law.[3]  (*See id.*

at ¶¶ 12-13).  Saucedo allegedly worked an average of 65 hours per week, Garion an average of 80

hours per week, and Mesa an average of 72 hours per week.  (*See id.* at ¶ 11).  Saucedo alleges he

was paid an average of $12.00 per hour, Garion $3.44 per hour, and Mesa $3.47 per hour.  (*See id.*

at ¶¶ 12-13).  In the Motion, Defendants argue they are entitled to a judgment on a variety of

---

[2]  The FLSA mandates that an employee covered under the Act "who works for more than forty hours a week is entitled to overtime compensation equal to one and a half times his regular rate of pay."  *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1311 (11th Cir. 2007) (citing 29 U.S.C. § 207).

[3]  *See* 29 U.S.C. § 206(a)(1) (establishing federal minimum wage); Fla. Stat. § 448.110(3) (Florida minimum wage).

2

Case No.  08-21156-CIV-ALTONAGA/Brown

grounds.

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

Case No.  08-21156-CIV-ALTONAGA/Brown

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III.  ANALYSIS

A.     *FLSA exemptions*

Defendants assert a judgment should be granted in their favor because Plaintiffs are exempt from the FLSA based on the "automobile salesman" exemption of 29 U.S.C. § 213(b)(10).  Section 213(b)(10) provides,

> (b) Maximum hour requirements
>
> The provisions of section 207 of this title shall not apply with respect to--
>
> \*        \*        \*        \*
>
> (10)(A) any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers; . . . .

The exemptions in Subsection (b) clearly apply to "maximum hour" or overtime violations.  Subsection (a) of Section 213 provides exemptions that apply to both "[m]inimum wage and maximum hour requirements."  According to the plain language of the statute, the "automobile salesman" exemption applies only to overtime violations.

As stated, it is undisputed Plaintiffs were employed as used car salesmen.  Plaintiffs do not

Case No.  08-21156-CIV-ALTONAGA/Brown

appear to dispute that Phoenix is primarily engaged in the business of selling vehicles to ultimate purchasers.  Plaintiffs, therefore, fall within this exemption to the extent they assert overtime violations.  Accordingly, Defendants are entitled to a summary judgment with respect to Saucedo's claim for overtime wages.  The exemption, however, does not apply to the minimum wage claims asserted by Garion and Mesa, and summary judgment on those claims is not appropriate on this ground.

Defendants also argue a judgment on all of Plaintiffs' claims should be granted because they are exempt as employees paid by commission under 29 U.S.C. § 207(i).[4]  Again, Section 207 applies specifically to maximum hour or overtime claims.  Accordingly, Mesa and Garion are not exempt for purposes of their minimum wage claims.

B.      *FLSA jurisdiction*

Defendants seek summary judgment on all of Plaintiffs' federal claims based on the lack of jurisdiction under the FLSA.  To establish jurisdiction under the FLSA, a plaintiff employee must show either (1) individual coverage – that the employee was engaged in commerce or in the production of goods for commerce; or (2) enterprise coverage – that the employer was engaged in

---

[4]  Section 207(i) provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

5

Case No.  08-21156-CIV-ALTONAGA/Brown

commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a); *Scott v. K.W. Max Investments, Inc.*, 256 Fed. App'x 244, 247 (11th Cir. 2007).  Viewing the facts in the light most favorable to Plaintiffs, Defendants assert jurisdiction on neither an individual nor an enterprise basis exists, and judgment should be granted in their favor.  Plaintiffs do not appear to contend they are individually covered, and thus only enterprise coverage is considered here.

An employer is subject to enterprise coverage under the FLSA where it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ."  29 U.S.C. § 203(s).  For the purposes of enterprise coverage, the term " '[g]oods' . . . does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."  29 U.S.C. § 203(i).  The regulation interpreting the FLSA provides further clarification:

> An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if . . . it regularly and recurrently has at least two or more employees engaged in such activities.  On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238 (1970).

As stated, Defendants concede their annual gross sales exceed $500,000.  Jurisdiction under the FLSA then turns on whether Phoenix has employees engaged in commerce or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced

Case No.  08-21156-CIV-ALTONAGA/Brown

for commerce by any person."  Defendants argue they are entitled to a judgment because these requirements are not satisfied.

Plaintiffs contend enterprise jurisdiction is proper because Phoenix sells automobiles that have previously moved in interstate commerce.[5]  In a very recent decision, Judge Patricia A. Seitz addressed the issue of enterprise jurisdiction under the FLSA and the question of whether such jurisdiction exists where the employer handles materials that previously moved in commerce.  *See Exime v. E.W. Ventures, Inc.*, Case No. 08-cv-60099, 2008 WL 5381294 (S.D. Fla. Dec. 23, 2008). In *Exime*, the plaintiff was an employee of a dry cleaning plant that served customers solely within Florida.  The defendants moved for summary judgment arguing FLSA enterprise jurisdiction was lacking because they operated locally and their use of equipment and supplies in connection with their business that had previously moved in interstate commerce was insufficient to establish enterprise coverage.  The defendants asserted they were the ultimate consumers of such equipment and supplies.

In a well-reasoned decision, Judge Seitz disagreed with the defendants' interpretation of FLSA enterprise jurisdiction:

> Defendants' argument, however, ultimately turns on the assumption that the terms "goods" and "materials"[7] share the same statutory definition. But, in order to accept Defendants' narrow interpretation, it would be necessary to wholly ignore the 1974 amendment to § 203(s)(l)(A)(i), as well as the accompanying Senate Report.  That Report provides:

---

[5]  Defendants claim Plaintiffs have failed to establish the automobiles sold by Phoenix moved in interstate commerce.  As noted, Robert Norris stated Phoenix carried a mixture of foreign and domestic cars. (*See Pl. Mat. Facts* at 3 (citing *Dep. of R. Norris*)).  Plaintiffs ask the Court to take judicial notice of the fact that foreign automobiles are not produced in Florida and attach a print-out from the Toyota website to support this proposition.  It is safe to assume vehicles sold at Phoenix were produced outside Florida and traveled in interstate commerce to get there.

7

> The bill also adds the words "or materials" after the word "goods"
> [in § 203(s)(l)(A)(i) ] to make clear the Congressional intent to
> include within this additional basis of coverage the *handling of*
> *goods consumed in the employer's business, as, e.g., the soap used*
> *by a laundry* . . .

S. Rep. No 93-690, 93rd Cong., 2nd Sess. at 17 (1974) (emphasis added).

Significantly, the specific example cited in the 1974 Senate Report, "e.g., the soap used by a laundry," demonstrates a clear Congressional intent to expand enterprise jurisdiction to companies whose employees handle interstate materials used in the employer's own business, regardless of whether that employer is the ultimate consumer of those materials. In other words, the additional term "materials" broadens FLSA jurisdiction by substantially constricting the "ultimate consumer" defense now asserted by Defendants.  *See Whitehead*, 463 F. Supp. at 1337 (noting that 1974 amendment precludes "ultimate consumer" defense).  Most, if not every, Circuit Court that has spoken on this issue has similarly construed the 1974 amendment as expanding enterprise coverage to virtually all employers, so long as that employer satisfies the $500,000 gross sales requirement.[8]  This statutory interpretation is also supported by numerous decisions arising within this Circuit.  *See Dunlop v. Industrial America Corporation*, 516 F.2d 498, 500- 502 (5th Cir. 1975) (ultimate consumer defense viable only prior to 1974 amendment);[9]  *Galdames v. N & D Investment Corp.*, 2008 WL 4372889, at *5 (S.D. Fla. 2008) (given 1974 amendment, "[i]t is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory [$500,000] gross sales requirement is subject to [enterprise coverage]."); *Daniel v. Pizza Zone Italian Grill & Sports Bar*, 2008 WL 793660, at *1 (M.D. Fla. 2008) ("enterprise coverage embraces virtually every business whose annual gross volume of sales or business is $500,000 . . ."); *Whitehead*, 463 F. Supp. at 1336-1337 (ultimate consumer defense "fails to take into consideration the specific addition of the words 'or materials'"); *see also* "Coverage of the Fair Labor Standards Act: What Connection With Commerce Brings an Employee Within the Coverage of the Fair Labor Standards Act?" 81 Fla. B.J. 77, 78 (June 2007) ("[u]nder the liberal authority of cases decided on facts occurring after the effective date of the 1974 amendment, it is difficult to conceive of a business with the requisite dollar volume of business that would not be found to be an enterprise within the meaning of § 203(s)(l) (A)(i)"); Wage and Hour Law: Compliance and Practice, Chapter 4 § 30, West Publishing Company 2008 (in light of 1974 amendment, "[f]or practical purposes, all businesses now meet the commerce test of enterprise coverage.").

Despite such authority, Defendants raise various arguments to support the continued viability of the "ultimate consumer" defense. First, Defendants contend that this Court must disregard § 203's legislative history. *See Bedroc Ltd. v. United States*, 541 U.S. 176, 186 (2004) (legislative history not appropriate where plain meaning of statute is clear). Contrary to such argument, however, the Eleventh Circuit expressly instructs that such historical analysis is necessary to solve statutory ambiguity. *See U.S. v. Fields*, 500 F.3d 1327, 1330 (11th Cir. 2007) ("In the absence of any plain meaning of the statutory language, we look to the legislative history of the statute to determine whether Congress provided any guidance concerning its intent").

Here, in the absence of the 1974 Senate Report, the meaning of the term "or materials" is ambiguous. On one hand, it is plausible that Congress intended "goods" and "materials" to share the same operative definition. Such an interpretation, however, would completely nullify the 1974 amendment, as the phrase "or materials" would be mere surplusage. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1204-1205 (11th Cir. 2007) (failure to give effect, if possible, to every word and clause violates rule of statutory construction). In addition, the statutory definition of the term "goods" expressly excludes all items delivered to an ultimate consumer. *See* 29 U.S.C. § 203(i). On the other hand, Merriam-Webster's Dictionary defines "materials" as "relating to, derived from, or consisting of matter." Merriam-Webster's Dictionary, Tenth Edition, p. 717. Thus, the plain meaning of "materials" is not limited by an ultimate consumer exclusion. As such, it is equally plausible that the term "materials" is significantly broader than the term "goods." Given the ambiguity, and in light of the Eleventh Circuit's direction in *Fields*, this Court must consider § 203's legislative history. *See Fields*, 500 F.3d at 1329-1330.

Defendants also cite the following case law to support their narrow interpretation of § 203(s)(l)(A)(i) and to minimize the jurisdictional implications of the 1974 amendment, namely: *Dunlop v. Industrial Am. Corp.*, 516 F.2d 498 (5th Cir. 1975); *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006); *Scott v. K.W. Max Investments, Incorporated*, 256 Fed. Appx. 244, 248 (11th Cir. 2007); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008); *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312, 1317 (S.D. Fla. 2008); *Polycarpe v. E & S Landscaping Service, Inc.*, 2008 WL 3866498 (S.D. Fla. 2008); *Milbourn v. Aarmada Protection Systems 2000, Inc.*, 2008 WL 5044550, at *4-5 (S.D. Fla. 2008); *Monelus v. Tocodrian, Inc.*, Case No: 07-61801-WPD-DE-40; *Velasquez v. All Florida Security Corp.*, Case No:

Case No.  08-21156-CIV-ALTONAGA/Brown

07-23159-JLK-DE-25.  This precedent, however, is distinguishable for a number of reasons.  For example, *Thorne* and *Navarro* are inapplicable, because they merely dealt with individual FLSA coverage.  The *Dunlop* decision stands for the narrow proposition that employers could properly raise the ultimate consumer defense, prior to the 1974 amendment to § 203(s)(l)(A)(i).[10]  *See Dunlop*, 516 F.2d at 502 ("prior to its amendment in 1974 the Fair Labor Standards Act did not reach enterprises which provided only services . . . and did not pass on any goods obtained from interstate commerce").  Finally, *Scott, Bien-Aime, Polycarpe, Milbourn, Monelus*, and *Velasquez* do not consider § 203's legislative history, and more specifically, the 1974 Senate Report.[11]  In short, and despite Defendants' countervailing arguments, the Court has determined that the "ultimate consumer" defense has been significantly constricted by the 1974 amendment to § 203(s)(l)(A)(i), as clarified by the corresponding legislative history.  Thus, the enterprise commerce test, quite simply, embraces all businesses whose employees regularly handle materials previously moved across inter-state lines.

    [7]  Defendants contend that "there is no reason to interpret 'materials' in the statute any differently from the term 'goods.'" (Reply to Motion for Summary Judgment, p. 6, DE-33.)  Therefore, according to Defendants, the joint definition of "goods" and "materials" should exclude ultimate consumers, such as Defendants, from FLSA enterprise jurisdiction.  *See* 29 U.S.C. § 203(i) (the term "goods" excludes ultimate consumers of interstate products for purposes of enterprise jurisdiction).

    [8]  As noted above, courts in sister Circuits have similarly interpreted the effect of the 1974 amendment.  *See Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 695 (4th Cir. 1990); *Donovan v. Pointon*, 717 F.2d 1320, 1322-1323 (10th Cir. 1983) ("[t]he fact that [defendant] may have himself acquired the goods and materials . . . from sources within the state of Oklahoma is irrelevant to a determination of whether [defendant] is a covered employer . . . [t]he critical issue is whether the goods or materials handled by [defendant] and his employees had moved in interstate commerce"); *Marshall v. Brunner*, 668 F.2d 748, 751- 752 (3rd Cir. 1982); *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981); *see also Archie v. Grand Central Partnership, Inc.*, 997 F. Supp. 504, 529-530 (S.D.N.Y. 1998) ("[t]his amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (citation omitted); *Radulescu v. Moldowan*, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994); *Dole v. Bishop*, 740 F. Supp. 1221, 1226 (S.D. Miss. 1990); *Jones v. Cadillac Condominium Association, Inc.*,

10

Case No.  08-21156-CIV-ALTONAGA/Brown

1989 WL 49156, at *5 (D. Colo. 1989); *Marshall v. J.D. Davis*, 526 F. Supp. 325 (M.D. Tenn. 1981); *Marshall v. West County Disposal, Ltd.*, 1980 WL 2192 (E.D. Mo. 1980).

   9   Decisions of the Fifth Circuit, prior to September 30, 1981, are binding precedent on the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

   10   The *Dunlop* court also recognized that the 1974 amendment expanded FLSA jurisdiction to include ultimate consumer defendants.  *See Dunlop*, 516 F.2d at 502; *see also Whitehead*, 463 F. Supp. at 1338 (the *Dunlop* court "indicated that its interpretation of the effect of the amended Section 3(s) would extend coverage of the Act to employers . . . who conduct a wholly intrastate business, but whose employees, in the course of that business, use and handle any products . . . moved in interstate commerce, even though the products are purchased locally").

   11   Thus, while *Bien-Aime*, *Polycarpe*, *Milbourn*, *Monelus*, and *Velasquez* implicitly reject the necessity of analyzing § 203's legislative history, the ambiguity as to the precise meaning of "or materials," in conjunction with the term "goods," cannot be reconciled based solely on the plain language of the statute.

*Exime*, 2008 WL 5381294 at *4-5.

   As noted in *Exime*, the argument regarding the legislative history of the 1974 Amendment to Section 203 was not raised by the parties or considered in *Milbourn*, another case decided by the undersigned.  Despite Plaintiffs' similar failure to properly articulate the legislative history aspect of the argument here, the undersigned is persuaded by the reasoning set forth in *Exime*, a decision the undersigned may take notice of.[6]  Phoenix's handling of automobiles that moved in interstate commerce, even though they had previously reached an ultimate consumer, is sufficient to meet the

---

   [6] The Court is not at liberty to grant summary judgment on a claim not presented in the motion unless it first gives notice to the parties that it intends to address the claim.  *See Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1264 (11th Cir. 2008).  The Court's consideration of the legislative history of the 1974 Amendment to Section 203 as addressed in the *Exime* decision, an issue not briefed by the parties, results in a denial of Defendants' Motion, and accordingly requires no notice.

11

Case No.  08-21156-CIV-ALTONAGA/Brown

standard set out in *Exime.*  Thus, enterprise jurisdiction exists under the FLSA in this case.[7]

C.    *Florida minimum wage claims*

Defendants argue a judgment should be granted on Plaintiffs' state law minimum wage

claims because Plaintiffs failed to provide notice of the claims to Defendants in accordance with

Florida law.  Florida Statutes Section 448.110(6) reads,

> [P]rior to bringing any claim for unpaid minimum wages pursuant to this section, the
> person aggrieved shall notify the employer alleged to have violated this section, in
> writing, of an intent to initiate such an action.  The notice must identify the minimum
> wage to which the person aggrieved claims entitlement, the actual or estimated work
> dates and hours for which payment is sought, and the total amount of alleged unpaid
> wages through the date of the notice.

Fla. Stat. § 448.110(6)(a).  Upon receipt of this notice, an employer has fifteen days to resolve the

claim before an action may be filed to recover the unpaid wages.  Fla. Stat. § 448.110(6)(b).

Plaintiffs apparently concede they failed to provide Defendants the specified notice.  Instead

Plaintiffs argue their claims may proceed directly under the Florida Constitution rather than under

the statute, irrespective of statutory notice.  *See Throw v. Republic Enterprise Systems, Inc.*, Case

No. 06-cv-724, 2006 WL 1823783 (M.D. Fla. Jun. 30, 2006).

On November 2, 2004, Florida voters approved Amendment 5 on the ballot, which later

became Section 24, Article X of the Florida Constitution, creating a minimum wage requirement.

Subsection (e) authorizes employees to bring a civil action to enforce the provisions of Section 24,

and subsection (f) provides that implementing legislation is not required to enforce the constitutional

---

[7] Plaintiffs also argue Phoenix had employees in its finance department who were directly engaged
in commerce because employees sought financing for Phoenix customers from out-of-state sources.  Finance
employee Adriana Pineda-Gomez stated she obtained financing from outside Florida.  It is unclear from the
record whether any other employee besides Pineda-Gomez also engaged in such activities.  Because, as
stated, enterprise jurisdiction exists under the basis articulated, this alternative basis is not considered.

Case No.  08-21156-CIV-ALTONAGA/Brown

provision.  In *Throw*, the court found that Section 24 created "a constitutional right entitling all persons aggrieved by a violation of Section 24 to bring a civil action in a court of competent jurisdiction.    Further, Section 24, subsection (f), specifically states, in pertinent part, "'[i]mplementing legislation is not required in order to enforce this amendment.'  Thus, Section 24 creates a constitutional right directly enforceable in a court of law by an aggrieved party with no requirement that notice be given."  *Throw*, 2006 WL 1823783, at *2.  The court concluded that, while it was a close question, a plaintiff may bring a minimum wage claim under the Florida Constitution without complying with the notice requirements of the implementing statute, ostensibly finding the notice requirement unconstitutional.

In *Resnick v. Oppenheimer & Co. Inc.*, Case No. 07-cv-80609, 2008 WL 113665 (S.D. Fla. Jan. 8, 2008) the court reached the opposite conclusion.  The *Resnick* court stated,

> Article X, Section 24, subsection (f) does indeed state that "implementing legislation is not required in order to enforce this amendment." Fla. Const. art. X, § 24(f).  However, that same section also states that the "state legislature may by statute . . . adopt any measures appropriate for the implementation of this amendment." Fla. Const. art. X, § 24.  Reading these two sentences together, it appears that the people of Florida intended to guarantee workers a constitutional right to a minimum wage without making the right dependent upon the action of the legislature.  However, at the same time, the people of Florida authorized the legislature, in its wisdom, to enact legislation that would implement the constitutional right.

> Thus, the fact that an individual has a constitutionally guaranteed ability to enforce a right does not mean that the legislature is categorically barred from regulating the method of that enforcement when such regulation is permitted on the face of the constitutional provision.

*Id.* at *2-3.  The court went on to examine other precedent from the Florida Supreme Court and concluded the notice requirement was valid, and the plaintiff's claim failed due to lack of

Case No.  08-21156-CIV-ALTONAGA/Brown

compliance.  The undersigned agrees with the reasoning and outcome of *Resnick*.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (stating that it is "incumbent . . . to read the statute to eliminate [constitutional ] doubts so long as such a reading is not plainly contrary to the intent of Congress.") (citation omitted); *Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (holding that lower courts run "afoul" of a well established principle of statutory interpretation when they fail to avoid constitutional difficulties and broadly interpret a statute) (citations omitted).

Because Garion and Mesa did not provide notice of their claims to Defendants pursuant to Section 448.110, Defendants are entitled to a judgment on Garion and Mesa's Florida minimum wage claims.  Plaintiffs request leave to file a third amended complaint so they may cure the notice deficiency.  However, the deadline to amend pleadings passed on August 8, 2008, nearly five months ago.  (*See* Order Setting Trial [D.E. 19]).  Plaintiffs have not shown good cause for modifying the trial schedule.  *See* Federal Rule of Civil Procedure 16(b) ("[a] schedule may be modified only for good cause and with the judge's consent"); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."); *Saewitz v. Lexington Ins. Co.*, 133 Fed. App'x 695, 700 (11th Cir. 2005).

D.    *Other grounds for summary judgment*

Defendants assert a number of other grounds entitle them to a summary judgment.  They argue: (1) Plaintiffs cannot establish liability as to Defendant, Lori Norris; (2) Mesa and Saucedo have abandoned their minimum wage claims; (3) Plaintiffs' claims fail because they are "guessing" as to the number of hours they worked; (4) Garion and Mesa are improper "serial" plaintiffs and their claims should be dismissed; and (5) a judgment should be granted on the issue of liquidated damages

14

Case No.  08-21156-CIV-ALTONAGA/Brown

and willfulness.  Plaintiffs concede their claims as to Defendant, Lori Norris fail.  The undersigned finds the various other grounds meritless.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[D.E. 48]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)     The Motion is granted with respect to Saucedo's FLSA overtime claim and Garion and Mesa's minimum wage claims under Florida law.  The Motion is also granted as to all claims against Defendant, Lori Norris.

(2)     The Motion is denied in all other respects.  Garion and Mesa's FLSA minimum wage claims survive.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of January, 2009.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

15